UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:05CV-104-R

BARBARA V. HOWELL                                                                           PLAINTIFF

v.

DONITA KAY, et al.                                                                         DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on Defendants' Motion for Summary Judgment (Docket #27). Although Plaintiff did not file a response to this motion, the deadlines for such filings have passed. This matter is now ripe for adjudication. For the reasons that follow, Defendants' Motion for Summary Judgment is GRANTED.

**BACKGROUND**

On August 6, 2004, Plaintiff stopped in the Bowling Green Kroger with her sister whom she was visiting from Florida. While Plaintiff was in Kroger, employee Denija Redzic witnessed Plaintiff enter the bathroom with a couple of boxes of raisins. Redzic contacted her supervisor, Michael Powell, and told him of her observations. Redzic then saw Plaintiff coming out of the bathroom, walking out of the store, with five family packs of raisins underneath her dress. Powell tried to stop Plaintiff from walking out of the door. Plaintiff responded that she was going out to wait while her sister was inside grocery shopping. Powell observed that Plaintiff's breath reeked of alcohol and that she could not even stand.

Powell and store manager, Mark Bradshaw, escorted Plaintiff inside and upstairs to the manager's office. Plaintiff's sister approached Bradshaw and told him that Plaintiff had been

drinking and taking medication. Plaintiff became hostile as she was being escorted upstairs, shoving and cursing at Powell and Bradshaw.

Bradshaw called the police and officers Kahlil Flesher and Donitka Kay responded to the call. Bradshaw told the officers that Plaintiff had been observed going into the restroom, coming out with raisins under her dress, and walking out towards the door. The management also told the officers that when she was escorted upstairs she had become belligerent and violent. The officers handcuffed Plaintiff in the office and then escorted her from the store, walking on each side of Plaintiff with their arms placed inside of Plaintiff's arms that were handcuffed from behind. While she was being escorted, Plaintiff went limp, making it difficult for the officers to escort her. The officers were required to drag her out of the store, with their arms interlocked under Plaintiff's elbows.

The officers transported Plaintiff to the Warren County Regional Correctional Facility where she was processed. As Plaintiff complained of an injury to her arm and shoulder, the jail nurse, Bess Green, was asked to complete the booking process. Green observed that Plaintiff appeared to be intoxicated and was slurring her speech. Plaintiff admitted to consuming four vodka and orange juice drinks that day. Green noted that Plaintiff had old bruises to her upper and lower extremities. Plaintiff did not request any medical treatment. Plaintiff spent the night in jailed and was released after a court appearance the next morning.

On September 8, 2004, Plaintiff saw Dr. Edward Stolarski. Dr. Stolarski took x-rays and found that Plaintiff had an old radial head fracture in the elbow. When shown records of Dr. Leslie Schultzel that reflected a radial head fracture of the left elbow in 1998, Dr. Storlaski said the fracture

apparent on x-ray in September 2004 was the same fracture that occurred in 1998.[1] On a follow up visit on October 4, 2004, Plaintiff told the attending physician that she had injured her elbow in August of 2004 while playing with her family.

On July 29, 2005, Plaintiff filed the instant suit. Plaintiff alleges that Officers Kay and Flesher used excessive force to effectuate her arrest that resulted in bruises about the body and a broken elbow. Plaintiff also alleges that the City of Bowling Green failed to properly train, discipline, or supervise its officers, and that the City failed to take any remedial action as a result of excessive force which resulted in an atmosphere of acquiescence in excessive force and unlawful conduct that created a continuing and persistent pattern of unconstitutional conduct by the Bowling Green Police Department and the City of Bowling Green. Defendants filed a Motion for Summary Judgment on June 1, 2007.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party

---

[1] In her deposition testimony, Plaintiff denied ever injuring her left elbow prior to August 6, 2004.

bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

### I.     MUNICIPAL LIABILITY

A municipality may be liable under 42 U.S.C. § 1983 through (1) actions of legislative bodies; (2) agencies exercising delegated authority that amounts to an official policy; (3) the actions of individuals with final decision-making authority; (4) policies of inadequate training or supervision; or (5) custom. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 473, 480, 481-84 (1986); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 661, 694 (1978); *City of Canton v. Harris*, 489 U.S. 378, 387-90 (1989). In her complaint, Plaintiff alleges that the City of Bowling Green was aware of excessive force implemented by its officers but failed to sanction, punish, or otherwise correct

the problem and in fact acquiesced to the excessive use of force. Plaintiff also alleges that the City failed to properly train and supervise officers. Plaintiff asserts that there existed a continuing and persistent pattern of unconstitutional conduct by the Bowling Green Police Department.

Here, Plaintiff has failed to produce any evidence demonstrating that the City acted with disregard to the constitutional rights of its citizens by condoning or allowing its police officers to effectuate unlawful arrests, and, therefore, Plaintiff's claim against the City fails as a matter of law. *See City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989); *Hartsel*, 87 F.3d at 799 (citing *Anderson*, 477 U.S. at 251).

## II. EXCESSIVE FORCE:

The Supreme Court has held that excessive force claims are best analyzed under the Fourth Amendment's protection against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 394 (1989). In determining whether excessive force was used, the Court must ask whether the officer's actions, in light of the totality of the circumstances, were objectively reasonable.[2] *Id.* at 396-97. In determining whether an officer's actions were reasonable, the specific facts of each case are key. *Id.* at 396. The Court should pay particular attention to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The Court "must balance the consequences to the individual against the government's interest in effecting the seizure." *Burchett*

---

[2] Defendants, citing to *Traver v. City of Edna*, 410 F.3d 745 (5th Cir. 2005), assert that in order to recover on an excessive force claim a plaintiff must show some actual injury caused by the unreasonable seizure that is not de minimis. However, there is no requirement in the Sixth Circuit that a plaintiff must show any injury caused by the unreasonable seizure. *See Cornwell v. Dahlberg*, 963 F.2d 912, 915 (6th Cir. 1992); *Holmes v. City of Massillon*, 78 F.3d 1041, 1048 (6th Cir. 1996).

*v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). "This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Id.*

Powell, the assistant store manager, witnessed the entire exchange between Plaintiff and the officers. Powell testified that he never saw the officers abuse or mistreat her. Redzic and Bradshaw also testified that they did not observe the officers physically abuse Plaintiff. The store employees indicated that Plaintiff refused to walk after she was handcuffed which required the officers to place their arms through hers. Because Plaintiff refused to walk, the officers had to pick her up off the ground in their efforts to remove her from the store. Plaintiff also testified that Officer Fisher was escorting her in a civil manner and was trying not be abusive.

The Court finds that in light of Plaintiff's refusal to walk with the officers, the officer's actions were objectively reasonable. *See Graham*, 490 U.S. at 396-97. Therefore, Plaintiff's Fourth Amendment claim fails as a matter of law.

## III. ASSAULT AND BATTERY

One is liable for assault under Kentucky law if "he acts intending to cause a harmful or offensive contact . . . or an imminent apprehension of such a contact . . . and the other is put in such imminent apprehension. *Humphress v. United Parcel Serv., Inc.*, 31 F. Supp. 2d 1004, 1014 (W.D. Ky. 1997) (citing RESTATEMENT (SECOND) OF TORTS § 21). A battery is "any unlawful touching of the person of another, either by the aggressor himself, or by any substance set in motion by him." *Sigler v. Ralph*, 417 S.W.2d 239, 241 (Ky. 1967). An officer making an arrest may use such force as may be necessary or reasonably appears to him to be necessary, under the totality of the circumstances, to effect an arrest. *Lexington v. Gray*, 499 S.W.2d 72, 74 (Ky. 1973).

As stated above, the officers used reasonable force, taking into account Plaintiff's resistance, in effecting the arrest. Therefore, Plaintiff's claim of assault and battery fails as a matter of law. *See id.*

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is GRANTED. An appropriate order shall issue.